IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01194-GPG

CHRISTOPHER SELECTMAN,

    Plaintiff,

v.

JOHN HICKENLOOPER, in his Official Capacity as Governor of the State of Colorado,
RICK RAEMISCH, in his Official Capacity as Executive Director of Colorado Department
    of Corrections,
BRANDON SCHAFFER, in his Official Capacity as Chairman of the Colorado Parole
    Board,

    Defendants.

## ORDER TO DISMISS

    Plaintiff, Christopher Selectman, is a prisoner in the custody of the Colorado Department of Corrections (DOC), currently incarcerated at the Sterling Correctional Facility in Sterling, Colorado.  Mr. Selectman initiated this action by filing *pro se* a Prisoner Complaint asserting a deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. (ECF No. 1).  He has paid the filing fee in full.  On June 18, 2015, Magistrate Judge Gallagher ordered Plaintiff to cure certain designated deficiencies in his complaint.  (ECF No. 3).  On August 17, 2015, Plaintiff filed an amended Prisoner Complaint. (ECF No. 6).  He asks for declaratory and injunctive relief, as well as attorney fees and costs and any further relief the court deems just and proper.

    Pursuant to D.C.Colo.L.CivR 8.1(b)(3) and 28 U.S.C. § 1915A, this Court can review a prisoner's pleadings seeking redress from a governmental entity, officer, or

employee to determine if the pleadings should be dismissed summarily. Under § 1915A(b), the Court must dismiss the Amended Complaint, or any portion thereof, that is (1) frivolous, or (2) that seeks monetary relief from a defendant who is immune from such relief. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

The Court must construe Mr. Selectman's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as an advocate for *pro se* litigants. *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss this action as legally frivolous.

**I. Background**

Plaintiff was sentenced to life without parole after his conviction for a felony murder. The felony murder occurred in February 1994, when Plaintiff was a sixteen year old minor. According to Plaintiff, he was abused as a child and spent the majority of his childhood in the hospital because of third degree burns over 75% of his body. (ECF No. 1 at 5). He was raised around drug addicts, alcoholics and drug dealers. (*Id.*)

On the day of the murder, Plaintiff and a few of his friends attempted to purchase marijuana from an acquaintance. (*Id.*) Plaintiff alleges that when he and the seller stepped inside a foyer area to complete the transaction, a physical altercation started; Plaintiff pulled a gun, a struggle ensued over the weapon, and the seller was shot several times. (*Id.*)

According to Plaintiff, the prosecutor used his discretion to charge Plaintiff as an

2

adult. As a result, when he was convicted of felony murder, Colorado law mandated that he be sentenced to life in prison without parole. The trial court was not able to consider his juvenile status. To date, he has served twenty-one years in adult prison. (*Id.* at 6)

Based on his sentence, Mr. Selectman has never had the chance to be considered for parole. According to Mr. Selectman, he has taken every opportunity to rehabilitate himself. He obtained his GED, has taken college courses, completed The Seven Habits for Highly Effective People, Basic Music Theory, Industrial Technology, Basic Computer Information Processing, Vocational Custodial Services Technology, and numerous other courses. (*Id.*)

## II. Analysis

Mr. Selectman sues the Defendants in their official capacities. Therefore, the claims, which are asserted against State employees, are construed as against the State of Colorado. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating that claims asserted against government officials in their official capacities are construed against the governmental entity). The State and its officers or agents sued in their official capacities are entitled to Eleventh Amendment immunity, absent a waiver. *See generally Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988) (the immunity conferred by the Eleventh Amendment extends to the state and its instrumentalities); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984) (Eleventh Amendment immunity applies to state officials sued in their official capacities). Congress did not abrogate Eleventh Amendment immunity through § 1983, *see Quern*

*v. Jordan*, 440 U.S. 332, 345 (1979), nor has the State of Colorado expressly waived its sovereign immunity. *See Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir.1988). As a result, Plaintiff cannot obtain a judgment for damages against the individual Defendants, sued in their official capacities. However, to the extent the Complaint asserts a cognizable claim for relief under § 1983, Plaintiff is not precluded from seeking prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Branson Sch. Dist. RE–82 v. Romer*, 161 F.3d 619, 631 (10th Cir.1998) ("[A] suit against a state official in his or her official capacity seeking prospective injunctive relief is not . . . against the state for Eleventh Amendment purposes."); *Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). In this case, Plaintiff is seeking prospective declaratory and injunctive relief, which is not barred by Eleventh Amendment immunity.

Plaintiff alleges three claims for relief based on: (1) cruel and unusual punishment; (2) due process violations; and (3) customary international law.

**A. § 1983 Customary International Law Claim**

The Amended Complaint invokes protections based on the Universal Declaration on Human Rights, the International Covenant on Civil and Political Rights ("ICCPR"), and the U.N. Convention on the Rights of the Child. However, none of these Declarations, Covenants, or Conventions are federal laws and, therefore, they do not form a basis for a § 1983 action. *See Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 259 (2d Cir. 2003)(Universal Declaration of Human Rights is a resolution of the United

4

Nations General Assembly and, thus, merely an aspirational document that does not bind the United States); *Igartúa v. United States*, 626 F.3d 592, 602-603 (1st Cir. P.R. 2010) (Covenants in ICCPR have not been enacted by Congress and are not self-executing).

Accordingly, Plaintiff's claim based on an alleged violation of these customary international laws is dismissed as legally frivolous.

## B.  § 1983 Cruel and Unusual Punishment and Due Process Claims

Plaintiff also brings claims alleging cruel and unusual punishment and due process violations.  According to Plaintiff, Defendants' failure to afford him a meaningful opportunity for release, based on his juvenile status and his demonstrated maturity and rehabilitation constitutes punishment with no legitimate penological justification, and as such constitutes cruel and unusual punishment.

Further, Plaintiff alleges that Defendants have shown differential treatment to a particular class of juveniles whose convictions occurred after 1990 but prior to 2006 in violation of his due process rights. (ECF No. 6 at 6).  He alleges that the Colorado statute, which mandates a sentence of life without parole for juveniles convicted of a class 1 felony between 1990 and July 1, 2006, is unconstitutional as applied to him. (*Id.*); *see* C.R.S.  § 18-1.3-401(4)(a)-(b) (previously C.R.S. § 18-1-105(a)).

Although Plaintiff carefully attempts to craft his claims as based on § 1983 constitutional violations and specifically states, he "does not challenge his judgment of conviction; rather Plaintiff seeks orders that the Colorado Department of Corrections afford him, as person [sic] sentenced to life imprisonment for offenses committed before

he was eighteen years old, a meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation," (ECF No. 6 at 4), it is clear that he is ultimately seeking to obtain a change in his criminal sentence. He is currently sentenced to life without parole. If the Court granted him relief on his § 1983 claims, he would be entitled to a possibility of parole, which obviously affects his current sentence.

A plaintiff may not bring a § 1983 claim to challenge the legality or duration of his custody or conviction, or raise a constitutional challenge which could entitle him to an earlier release. *Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005); *Preiser v. Rodriguez*, 411 U.S. 475, 477, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). He must seek such relief through a writ of habeas corpus. *Id.* Further, relief under § 1983 for an allegedly unconstitutional conviction or imprisonment does not accrue until the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 489-90, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

Pursuant to *Heck*, if a judgment for damages favorable to a prisoner in a § 1983 action necessarily would imply the invalidity of a prisoner's criminal conviction or sentence, the § 1983 action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. *Id.* at 486-87. The *Heck* doctrine, which specifically stated it was for § 1983 claims seeking damages, has also been extended to cases seeking equitable relief. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (reaffirming that "a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or

equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–if success in that action would necessarily demonstrate the invalidity of confinement or its duration."). A dismissal under *Heck* is without prejudice. *See Fottler v. United States,* 73 F.3d 1064, 1065 (10th Cir.1996).

In contrast, a plaintiff may utilize § 1983 and avoid the *Heck* bar if success in the action would not necessarily "vitiate the legality of (not previously invalidated) state confinement." *Wilkinson*, 544 U.S. at 81. For example, some courts have allowed plaintiffs to proceed with a § 1983 claim seeking changes to the procedures used to determine parole eligibility when success in the "§ 1983 claim would not necessarily affect the duration of [the plaintiff's] sentence because prison officials would retain discretion regarding whether to grant him parole." *See id.* at 82; *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014); *Greiman v. Hodges*, 79 F. Supp. 3d 933 (S.D. Iowa 2015) (denying motion to dismiss where Plaintiff, a juvenile sentenced to life with the possibility of parole, alleged that Defendants continue to deprive Plaintiff of a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," thereby violating his right to be free from cruel and unusual punishment). However, in all of these cases, the plaintiffs' sentences included the possibility of parole. Therefore, success on the § 1983 claims would not affect the validity of the plaintiffs' convictions and sentences and would not necessarily affect the length of custody.

In this case, however, if Mr. Selectman is successful, the legality of his state sentence would necessarily be affected. If his § 1983 claims were successful, he would have an opportunity for parole, which his current sentence does not allow. Although he

does not seek direct release from prison, he seeks an opportunity to pursue parole, which is currently unavailable under his sentence.

The Court has found one similar case, where plaintiffs, who were sentenced to life without parole for crimes committed when they were juveniles, brought claims under § 1983 challenging the constitutionality of the state's sentencing statute, which prohibited the Parole Board from considering them for parole. *Hill v. Snyder*, No. 10-14568, 2013 U.S. Dist. LEXIS 12160 (E.D. Mich. Jan. 30, 2013). In *Hill*, the District Court held that it was not able to grant relief to the Plaintiffs in the form of ordering their re-sentencing because Plaintiffs must seek such relief in state court or, if necessary, through a writ of habeas corpus. *Id.* at *7-8. However, the Court held that Plaintiffs were entitled to relief with respect to the parole statute itself. *Id.* at *8. The Court declared the Michigan parole statute unconstitutional as it applied to the Plaintiffs, who received mandatory life sentences as juveniles. *Id.* The Court stated that "[a]s a result, Plaintiffs will be eligible and considered for parole." *Id.*

This Court questions the soundness of this holding because the relief granted obviously affected the Plaintiffs' sentences as they were given the opportunity for parole, which their sentences did not allow. The Sixth Circuit also questioned the district court's holding. *See Maxey v. Snyder*, No. 13-2661, 2013 U.S. App. LEXIS 26308 (6th Cir. Dec. 23, 2014).

After the district court in *Hill* issued a subsequent order directing that the State of Michigan create an administrative structure for the purpose of processing and determining the appropriateness of parole for prisoners who were sentenced to life

without parole for crimes committed as juveniles, the State of Michigan filed an appeal to the Sixth Circuit seeking to stay the order pending the outcome of its appeal. *Maxey*, 2013 U.S. App. LEXIS 26308, at *1-2.

The Sixth Circuit granted the stay finding that the State demonstrated a "likelihood of reversal." *Id.* at 6.  Questioning the soundness of the district court's ruling, the Sixth Circuit stated: "If a conviction for a particular crime requires a sentence of life without parole, an action demanding consideration for parole would appear to be an attack on the sentence itself, which is something that should not be done in a § 1983 setting." *Id.* at *4-5.  This Court agrees with this reasoning of the Sixth Circuit.  If a sentence does not allow parole, a prisoner cannot seek the opportunity for parole through a § 1983 action.

Therefore, Plaintiff's § 1983 claims will be dismissed without prejudice pursuant to the *Heck* doctrine.  If Plaintiff wishes to pursue any habeas corpus claims, he must file a separate habeas corpus action.

### C. Availability of Federal Habeas Relief

Although not specifically addressed in Plaintiff's Complaint, the Court feels compelled to address whether there is any possible federal habeas relief available for Plaintiff.

In 2012, the Supreme Court held that sentencing schemes that mandated life in prison without the possibility of parole ("LWOP") for juvenile offenders violated the Eighth Amendment. *Miller v. Alabama*, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Therefore, there is a question as to whether Plaintiff could submit a habeas petition

based on the new constitutional rule announced in *Miller*. Because Mr. Selectman previously filed a habeas petition in this court, *see Selectman v. Zavaras*, 1:09cv02006-WJM, any subsequent petition would be considered a "successive" petition. *See* 28 U.S.C. § 2244(b)(2). Under the habeas statute, a successive petition is allowed if "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2244(b)(2)(A).

However, the Supreme Court has not yet determined if the holding announced in *Miller* applies retroactively on collateral review. Oral arguments on the issue took place on Tuesday, October 13, 2015. *See Montgomery v. Louisiana*, 14-280, 135 S. Ct. 1546. The Tenth Circuit has noted that there is a split among circuits as to the retroactive application of *Miller*, but it has refrained from deciding the issue. *See Davis v. McCollum*, No. 15-5018, 2015 U.S. App. LEXIS 15021, at *4-5 (10th Cir. Aug. 25, 2015). Nonetheless, even if the Supreme Court decides that the *Miller* holding constitutes a new rule of constitutional law that should be made retroactive to cases on collateral review, Mr. Selectman will be time-barred from submitting a new federal habeas application.

A one year limitation period applies to a § 2254 application for a writ of habeas corpus and, when based on a new rule of constitutional law, runs from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2244(d)(1)(C).

The Supreme Court, when considering the analagous one-year limitation period for federal prisoners submitting § 2255 applications for habeas corpus, held that the one year limitation period begins to run on "the date on which the right asserted was initially recognized by the Supreme Court," not on the date that the Supreme Court decides the right can be retroactively applied to cases on collateral review. *Dodd v. United States*, 545 U.S. 353, 359-360 (U.S. 2005); *see also Johnson v. Robert*, 431 F.3d 992, 992-93 (7th Cir. 2005) (per curiam) (holding that *Dodd* holding is equally applicable to § 2244(d)(1)(C)); *Davis*, 2015 U.S. App. LEXIS 15021 at *4-5 (calculating timeliness of habeas petition based on new constitutional rule in *Miller*).

Unfortunately for Mr. Selectman, when the *Miller* court created a new constitutional rule on June 25, 2012, the one-year time limitation for a habeas petition based on that rule began to run.  Therefore, unless Mr. Selectman filed for state post-conviction relief within a year of that ruling, it appears he is time-barred from pursing habeas relief in this court.

However, if the United States Supreme Court decides that the ruling in *Miller* should be applied retroactively, Mr. Selectman may be able to obtain relief in state court through a collateral Crim. P. 35(c) motion for post conviction relief.  Such relief is not currently available because the Colorado Supreme Court has held that *Miller* created a procedural rule, not a substantive rule of constitutional law and, therefore, the rule did not apply retroactively. *People v. Tate*, 352 P.3d 959, 966 (Colo. 2015).  Accordingly, Mr. Selectman cannot obtain relief in state court unless the United States Supreme Court overturns *Tate*.  Therefore, although there appears to be no current relief

available to Mr. Selectman in either the federal or state court systems, he should await the United States Supreme Court's decision in *Montgomery v. Louisiana*, as to whether *Miller* should be applied retroactively, to determine if he can obtain possible relief in state court in the future.

Accordingly, it is

ORDERED that Plaintiff's amended Prisoner Complaint (ECF No. 6) and this action are DISMISSED without prejudice as legally frivolous pursuant to the *Heck* doctrine.

DATED at Denver, Colorado, this __14th__ day of __October__, 2015.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court